## MYERS v. BALTIMORE & O. R. CO.

### No. 4040.

District Court, E. D. Pennsylvania.

June 27, 1945.

Joseph G. Feldman, of Philadelphia, Pa., for plaintiff.

Howard Burtt, of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

This action to recover for personal injuries and property damage arises out of a grade crossing collision between defendant's train, alleged to have been negligently operated, and plaintiff's automobile, which was operated by him at the time of the accident. Defendant denies the charge of negligence and asserts as an additional defense the negligence of the plaintiff. The broad questions for determination are at once evident.

The cause having come on to be heard by the court without a jury, on the basis of the pleadings and additional evidence, I make the following findings of fact:

1. The accident on which plaintiff's claim is based occurred at the intersection of Oregon Avenue and Vandalia Street, in the City of Philadelphia, on September 25, 1943 at about 10:30 P.M.

2. The night was dark, but clear and dry, and there was an electric street light at the southeast corner of the intersection.

3. At the time of the accident there were no obstructions north of Oregon Avenue at Vandalia Street or at any point within one hundred and fifty feet east of the intersection.

4. At Oregon Avenue there are two sets of tracks with a space of eight feet between each track. North of Oregon Avenue there is an unobstructed view of approximately one city block.

5. Immediately prior to and at the time of the accident defendant's engine, pulling twenty-eight loaded freight cars, was southbound on Vandalia Street on the west track, and at the time of the accident was travelling at a speed of about six miles per hour, being operated by its servants, agents or employees, in the course of their employment.

6. The automatic engine bell was turned on at a point approximately ten carlengths, or 400 feet, north of Oregon Avenue and continued to ring until after the collision occurred.

7. The engine's headlight was on bright at a point approximately ten carlengths, or 400 feet, north of Oregon Avenue and continued to burn bright until after the collision occurred.

8. The engineer blew the whistle for the crossing four times: two long blasts, one short blast, and one long blast; the first at a point eight carlengths, or 320 feet, north of the intersection and the last one as the engine entered the crossing.

9. Immediately prior to and at the time of the accident plaintiff's automobile was westbound on Oregon Avenue about four feet from the north curb line thereof.

10. Immediately prior to the time of the accident plaintiff was travelling at a very slow rate of speed.

11. At no time was any flagman or signalman situated on Oregon Avenue at or near the tracks to signal the approach of the engine.

12. Plaintiff did not stop his automobile before entering on the tracks of defendant, nor did he look and listen.

13. Plaintiff had driven over the crossing at least once before.

14. Plaintiff failed to heed the signals given by the engineer warning of the approach of the train.

15. As a result of the accident plaintiff sustained damage to his automobile in the amount of $440.

16. Plaintiff sustained permanent injuries in the form of a laceration three inches

long on the right arm starting just above the elbow and going down over the posterior aspect of it, across what is known as the "funny bone", requiring three sutures. Plaintiff sustained considerable bleeding as a result of this laceration. This laceration healed in the form of a permanent scar.

17. As a result of said laceration and injury, plaintiff has sustained a loss of sensation on the ulnar aspect of the right arm from the point of the injury down into the little finger, which will be permanent.

18. The plaintiff sustained an injury to his forehead with a scar at the place of the injury.

19. At the time of the accident plaintiff was employed by the Sun Ship Building Company as a laborer and earned $54.70 per seven-day week.

20. As a result of the injuries above mentioned plaintiff was disabled from his employment for a period of five weeks with loss of earnings in the amount of $273.50.

### Discussion.

The accident which gave rise to this litigation occurred in Philadelphia at approximately 10:30 P.M. on September 25, 1943. The weather was clear and dry; the night dark. The plaintiff, with a Miss Williams occupying the front seat next to him, was driving a 1939 Buick sedan in a westerly direction on Oregon Avenue, about four or five feet south of the north curb approaching the intersection of Vandalia Street, on which are located two sets of the defendant's tracks about eight feet apart. There was a single street light on the southeast corner of the intersection and plaintiff was using the "bright" beam of his automobile lights. The surrounding area to the north is not built up, and there are no other permanent obstructions, so that ordinarily within 150 feet east of the intersection there is a clear view northward for a distance of better than a city block; at the time of the accident there were no temporary obstructions to the view.

As the automobile crossed the second, or west track, it was struck on the right, or north side, at about the center, by defendant's engine, which was travelling south at a speed of about six miles per hour, pulling twenty-eight loaded cars.

Having set out the pertinent facts established by the uncontradicted evidence, the issues between the parties are narrowed down to two questions: (1) whether the defendant, through its servants or employees, was guilty of negligence in failing to give adequate warning of the approach of its train to the intersection, and (2) whether the plaintiff himself was guilty of negligence in failing to stop, look and listen before making the crossing.

The plaintiff testified that he stopped about four or five feet before reaching the east track and that he looked on both sides at that time, and again as he proceeded across, but on neither occasion did he hear or see anything. The plaintiff's testimony was substantially corroborated by a Miss Edith Williams who was sitting next to him on the front seat of the car. However, it does not appear from the record that Miss Williams herself looked or listened.

Moreover, the testimony given by Myers and Miss Williams on the witness stand is in conflict with their statements, made shortly after the accident. In his statement to the defendant's claim agent, Ralph M. Lett, on September 30, 1943, Myers said he was travelling five to ten miles per hour as he had slowed up for the crossing; he did not see anything coming nor did he hear any whistle; as the engine struck, he heard a bell ringing and when he looked out the headlight of the engine was shining so that he could see the reflection on the tracks south of the car; the bell was still ringing when he got out of the car. This statement was signed by Myers after it was read to him by his wife, who also signed. On the stand Myers stated that at the time the statement was taken he was ill and in bed as a result of the accident; he could not read, and could not and would not sign, but did so only after Lett's urging.

Moreover, he testified that he told Lett just what he said on direct examination, denying the statements in conflict with his testimony in Court; that he asked Lett to change the part about the light, and that Lett told him he would do so. This was totally denied by Lett, who testified that after the parties signed the statement the only conversation they had related to the disposition of the wrecked car, and that after he left he was called back by Mrs. Myers who asked him about his credentials and whether he was sent by their own attorney.

In her statement to Lett, given on October 4, 1943, Miss Williams said the automobile did not stop at the crossing and that as she was helped out of the car she noticed that the engine light was turned from "dim" to "bright". Immediately prior

to the accident she did not hear any whistle or bell, nor could she recall whether the bell was ringing after the accident. On the stand, she denied making these statements to Lett, but admitted signing the statement and also the clause averring that she read and understood it. Her only explanation of the contradictions between the statement and her testimony in Court was that she did not actually read the former, but merely glanced over it.

The evidence adduced by the plaintiff is partly negative, and the affirmative evidence is patently in conflict with prior statements made within a few days after the accident. Moreover, the testimony of Miss William and her inability to account for the differences between her statements in Court and her signed statements to Lett is particularly damaging to plaintiff's case.

The defendant produced, as witnesses, three of the crew on the train which figured in the collision in support of its contention that at the time of the accident the engine bell was ringing, the bright beam of the headlight was turned on, and just prior to entering the intersection the engine whistle was sounded four times—two long blasts followed by a short and a long blast. Clarence D. Rodenbaugh, the yard foreman, testified that he was on the left side of the engine at the time of the accident; that the engine had stopped approximately twenty car lengths (about 800 feet) from Oregon Avenue to await completion of the train; that the clapper bell on the engine was ringing continuously from the time the engine began to move to the time of the accident; that the bright beam of the headlight was on; that the engine whistle was first sounded at about eight to ten car lengths from Oregon Avenue; that four blasts were given—two long, a short and a long— the last blast being completed as the crossing was reached; that at this point he yelled to the engineer "Hold it"; and that he first noticed the Myers car when it was about 150 feet from the crossing, the engine being about eight to ten car lengths away.

This testimony as to the light, bell and whistle was confirmed by the testimony of Anthony G. Kelly, the engineer, and Lawrence Granthan, the fireman. Kelly also testified that he did not see the westbound automobile, but that he did see an eastbound machine which stopped when the engine was about six car lengths from the crossing. He also stated that when he heard the yell "Hold it", he applied the emergency brake.

Granthan, who occupied a position on the left side of the engine, further testified he first saw the westbound automobile when the engine was about seven car lengths from Oregon Avenue and at that time the automobile was about 300 feet from the tracks travelling about five to six miles per hour.

In addition to these witnesses, the defendant produced a John Kezlaw, the driver of the eastbound automobile to which Kelly, the engineer, referred. This witness testified that he heard the engine's whistle "a couple of times"; he stopped about thirty feet from the west track, and within a few seconds the accident happened. He did not hear any warning signal of the approaching train other than the whistle, and his attention was drawn by the lights of the Myers' car so that he did not notice whether the engine's headlight was on.

I am of the opinion that the testimony of these men is entitled to full credence, and that it clearly establishes that the engine's headlight was burning bright and its bell was ringing continuously from a point at least 400 feet before the point of the accident, and that the engine's whistle was sounded four times as the train approached the intersection, the first blast being given about 320 feet north of Oregon Avenue, and the last blast being completed as the engine entered the intersection. Although the night was dark, it was clear and dry and there was practically no traffic on the highway. Furthermore, within 150 feet east of the tracks, there was an unobstructed view northward for more than a city block; the engine was travelling at the rate of six miles per hour, and Myers at four to ten miles per hour. Under the circumstances, I am of the opinion that the warnings and signals given by defendant's employees were adequate and timely. I find it difficult to believe the plaintiff's assertion that he stopped, looked and listened before crossing the first track, and looked and listened again before crossing the second or west track. Had he been as observant as he claims, he would undoubtedly have heard or seen the approaching train, for, according to his own story, he was struck when he had proceeded only four feet across the second track: the train must have been practically upon him at the time he claims to have looked and listened.

280

Considering all the evidence. I am of the opinion that the plaintiff failed to stop, look or listen, and that he failed to heed the warnings given of the approaching train. Under the well-settled law of Pennsylvania such conduct is negligence per se and bars recovery. Baltimore & Ohio R. Co. v. Muldoon, 3 Cir., 1939, 102 F.2d 151, 152. Moreover, I feel that the plaintiff has attempted to alter his version of the accident in order to recover his losses caused by his own negligence.

Accordingly, I state the following conclusions of law:

1. The evidence fails to show any negligence on the part of the defendant, its servants, agents or employees, which caused or contributed to the happening of the accident.

2. The accident occurred solely as a result of the negligence of the plaintiff himself.

3. Under all the evidence the Court finds for the defendant.

An order may be submitted in accordance with this opinion.